LATHAM & WATKINS LLP
Elyse M. Greenwald (Bar No. 268050)
elyse.greenwald@lw.com
10250 Constellation Boulevard
Suite 1100
Los Angeles, CA 90067
Tel: 424.653.5500
Fax: 424.653.5501

Sarah A. Tomkowiak (*admitted pro hac vice*)
sarah.tomkowiak@lw.com
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201

*Attorneys for Defendants CoStar Group, Inc. and CoStar Realty Information, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALM, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC.,<br><br>Defendants. | Case No. 2:26-cv-04052-CBM-ASx<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Judge: Hon. Consuelo B. Marshall<br>Date: June 23, 2026<br>Time: 10:00 a.m.<br>Ctrm: 8D<br><br>[*(Proposed) Order, Declaration of Dariush Edalatkhah in Support of Motion to Transfer, and Declaration of Sarah A. Tomkowiak in Support of Motion to Transfer filed concurrently herewith*]<br><br>Complaint Filed: April 15, 2026 |

TO THIS HONORABLE COURT, AND TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on June 23, 2026 at 10:00 a.m., or as soon thereafter as this matter can be heard, in the courtroom of the Honorable Consuelo B. Marshall, located at the First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Courtroom 8D, Defendants CoStar Group, Inc., and CoStar Realty Information, Inc. (collectively "CoStar") will move for an order to transfer this case brought by Plaintiff Malm, Inc. ("Plaintiff" or "Malm") to the United States District Court of the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1404(a) and for a stay of discovery pending the Court's ruling on this motion and a ruling on Plaintiff's Motion to Transfer Related Actions for Coordinated or Consolidated Pretrial Proceedings with the U.S. Judicial Panel on Multidistrict Litigation (the "JPML Motion").

As set forth in the accompanying Memorandum of Points and Authorities, Plaintiff's claim for relief is based on allegations that CoStar's Terms and Conditions ("Terms") allegedly prohibit customers from sharing their own listings, data, and photographs with CoStar's competitors, and that CoStar enforces its Terms by watermarking images and imposing technological barriers. However, by signing in to its CoStar Suite account and affirmatively accepting CoStar's Terms on multiple occasions, Plaintiff agreed to CoStar's Terms, which include a valid and enforceable forum-selection clause identifying federal and state courts of Virginia as the exclusive judicial forum for Plaintiff's claims. Under *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 62 (2013), a forum-selection clause should be enforced absent "extraordinary circumstances." No such extraordinary circumstances exist here, and this case should be transferred to the Eastern District of Virginia under section 1404(a). Additionally, in order to avoid unnecessary waste of the Court's and the parties' resources, the Court should stay discovery pending the outcome of this motion and the JPML Motion. The

decisions on those motions will determine the forum to hear the putative class actions, the parties, and the claims at issue. Thus, staying discovery pending those rulings will conserve judicial resources, avoid duplicative litigation, and ensure uniform adjudication.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Dariush Edalatkhah and the exhibits attached thereto, the Declaration of Sarah A. Tomkowiak and the exhibits thereto, the pleadings and record on file in this matter, and upon all other arguments and evidence that may be presented to this Court.

**Compliance with Local Rule 7-3.** This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 12, 2026. The parties were unable to resolve the issues raised by this Motion.

Dated: May 22, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Sarah A. Tomkowiak*
Sarah A. Tomkowiak
(*admitted pro hac vice*)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201
Email: sarah.tomkowiak@lw.com

Elyse M. Greenwald
(Bar No. 268050)
10250 Constellation Boulevard
Suite 1100
Los Angeles, CA 90067
Tel: 424.653.5525
Fax: 424.653.5501
Email: elyse.greenwald@lw.com

*Attorneys for Defendants CoStar Group, Inc. and CoStar Realty Information, Inc.*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.      The Parties ............................................................................................ 3

        B.      Malm's Claims ..................................................................................... 3

        C.      The CoStar Terms of Use and Forum Selection Clause ...................... 5

        D.      Malm's Acceptance of CoStar's Terms of Use .................................. 6

        E.      The *Shapiro* Antitrust Class Action Was Filed First in the Eastern District of Virginia ................................................................. 6

III.    LEGAL STANDARD ........................................................................................ 7

IV.     ARGUMENT ..................................................................................................... 8

        A.      This Action Could Have Been Filed in the Eastern District of Virginia ................................................................................ 8

        B.      Malm Agreed to the Forum Selection Clause, Which is Mandatory and Plainly Covers Malm's Claim ................................... 9

                1.      Malm Agreed to Be Bound by the Forum Selection Clause ....................................................................................... 9

                2.      The Forum-Selection Clause is Mandatory, and Malm's Claims Fall Within its Scope ................................... 10

        C.      The Forum-Selection Clause is Valid and Enforceable .................... 12

        D.      Section 1404(a)'s Public Interest Factors Support Transfer .............................................................................................. 13

        E.      Alternatively, the Court Should Transfer This Action Pursuant to the First-to-File Rule ..................................................... 15

        F.      The Court Should Stay Discovery Pending the Outcome of Both Transfer Motions ................................................................. 18

                1.      CoStar Will Be Prejudiced if Discovery Proceeds ................. 18

                2.      Malm Will Face no Hardship if Discovery is Stayed .................................................................................... 19

                3.      A Stay of Discovery Serves the Interests of Judicial Economy ................................................................. 20

V.      CONCLUSION ................................................................................................ 21

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Addison v. DIRECTV, Inc.*,
2014 WL 12855831 (C.D. Cal. Nov. 14, 2014) .................................................... 18

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir. 1991) ....................................................................... 15, 16

*Amey v. Cinemark USA Inc.*,
2013 WL 12143815 (C.D. Cal. Oct. 18, 2013) ....................................... 18, 19, 21

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ................................................................................ 13

*Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*,
571 U.S. 49 (2013) ....................................................................................*passim*

*ATSC Melrose, Inc. v. IDEXX Distribution, Inc.*,
2026 WL 936937 (C.D. Cal. Apr. 1, 2026).......................................... 13, 14, 15

*Bowman v. Kona Univ., Inc.*,
2013 WL 3819674 (C.D. Cal. July 23, 2013) ..................................................... 11

*Cont'l Grain Co. v. Barge FBL-585*,
364 U.S. 19 (1960) .............................................................................................. 7

*CoStar Group, Inc., v. Commercial Real Estate Exchange, Inc.*,
No. 2:20-cv-8819 (C.D. Cal. Aug. 5, 2022)........................................................ 2

*Crawford v. Beachbody, LLC*,
2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) .................................................. 9, 13

*Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*,
130 F.2d 474 (3d Cir. 1942) ............................................................................... 16

*Cung Le v. Zuffa, LLC*,
108 F. Supp. 3d 768 (N.D. Cal. 2015)................................................................ 12

*Docksider, Ltd. v. Sea Tech., Ltd.*,
875 F.2d 762 (9th Cir. 1989) .............................................................................. 11

*Eliza Labs, Inc. v. X Corp.*,
  2025 WL 3003766 (N.D. Cal. Oct. 27, 2025)........................................................12

*EpicentRx, Inc. v. Super. Ct.*,
  18 Cal. 5th 58 (2025)............................................................................................13

*Frank v. Yardi Sys. Inc.*,
  2024 WL 5402339 (C.D. Cal. Dec. 11, 2024) ......................................................16

*Gamayo v. Match.com LLC*,
  2011 WL 3739542 (N.D. Cal. Aug. 24, 2011).......................................................10

*Gemini Cap. Grp., Inc. v. Yap Fishing Corp.*,
  150 F.3d 1088 (9th Cir. 1998)..............................................................................14

*Gunnar Optiks, LLC v. Mad Panda, LLC*,
  2015 WL 1013775 (S.D. Cal. Mar. 9, 2015)..........................................................16

*Hilton v. Apple Inc.*,
  2013 WL 5487317 (N.D. Cal. Oct. 1, 2013)..........................................................16

*Huffington v. T.C. Grp., LLC*,
  637 F.3d 18 (1st Cir. 2011) ..................................................................................11

*In re 1-800 Contacts Antitrust Litig.*,
  282 F. Supp. 3d 1358 (J.P.M.L. 2017) ...................................................................2

*In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*,
  899 F. Supp. 2d 1378 (J.P.M.L. 2012) ...................................................................2

*KMS, LLC v. Major League Trucking, Inc.*,
  2023 WL 5333784 (C.D. Cal. July 25, 2023) .......................................................15

*Koehler v. Pepperidge Farm, Inc.*,
  2013 WL 4806895 (N.D. Cal. Sept. 9, 2013).........................................................17

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
  787 F.3d 1237 (9th Cir. 2015)..............................................................................17

*Krikorian v. Post Consumer Brands, LLC*,
  2025 WL 2092825 (C.D. Cal. June 25, 2025)........................................................17

*Little v. City of Seattle*,
  863 F.2d 681 (9th Cir. 1988)................................................................................18

*Losson v. Union des Associations Europeennes de Football*,
2024 WL 3406987 (N.D. Cal. July 11, 2024) ........................................................ 12

*M/S Bremen v. Zapata Off-Shore Co. (Bremen)*,
407 U.S. 1 (1972) ..............................................................................................8, 13

*Martin v. Graybar Elec. Co.*,
266 F.2d 202 (7th Cir. 1959) ................................................................................ 16

*Moretti v. Hertz Corp.*,
2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ...................................................... 10

*Murphy v. Schneider Nat'l Inc.*,
362 F.3d 1133 (9th Cir. 2003) .....................................................................8, 12, 13

*N.Z. v. Fenix Int'l Ltd.*,
2025 WL 1122493 (C.D. Cal. Apr. 9, 2025), *reconsideration denied*, 2025 WL 3626154 (C.D. Cal. Dec. 12, 2025)........................................ 12

*Nomadix, Inc. v. Guest-Tek Interactive Entm't. Ltd.*,
2021 WL 4027807 (9th Cir. Sept. 3, 2021)........................................................... 11

*One Real Estate LLC v. CoStar Group, Inc.*,
No. 1:26-cv-01735 (D.D.C. May 20, 2026) ........................................................... 2

*Pacesetter Sys. Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982) ............................................................................15, 18

*Pragmatus AV, LLC v. Facebook, Inc.*,
769 F. Supp. 2d 991 (E.D. Va. 2011)................................................................... 14

*Quality Office Furnishing, Inc. v. Allsteel, Inc.*,
2017 WL 11662670 (C.D. Cal. June 23, 2017)....................................................... 8

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) (en banc)............................................................... 12

*Rivers v. Walt Disney Co.*,
980 F. Supp. 1358 (C.D. Cal. 1997)..................................................................... 18

*Rodriguez v. JetBlue Airways Corp.*,
2024 WL 841482 (C.D. Cal. Feb. 28, 2024) ........................................................ 17

*Ruckus Wireless, Inc. v. Harris Corp.*,
2012 WL 588792 (N.D. Cal. Feb. 22, 2012)......................................................... 16

*Sandler v. iStockphoto LP*,
　2016 WL 871626 (C.D. Cal. Feb. 5, 2016) ...................................................... 9, 10

*Scherk v. Alberto-Culver Co.*,
　417 U.S. 506 (1974) .............................................................................................. 13

*Segovia v. Bristol-Myers Squibb Co.*,
　2016 WL 7007482 (D. Haw. Nov. 30, 2016) ...................................................... 20

*Shapiro Hospitalities LLC v. CoStar Group, Inc.*,
　No. 1:26-cv-01027 (E.D. Va. Apr. 14, 2026) ...................................................... 1

*Stark v. Pfizer*,
　2014 WL 2938445 (N.D. Cal. June 27, 2014) .................................................... 20

*Stewart Org., Inc. v. Ricoh Corp.*,
　487 U.S. 22 (1988) .................................................................................................. 7

*Sun v. Advanced China Healthcare, Inc.*,
　901 F.3d 1081 (9th Cir. 2018) .................................................................. 10, 11, 13

*Van Dusen v. Barrack*,
　376 U.S. 612 (1964) ................................................................................................ 7

*Variscite, Inc. v. City of Los Angeles*,
　2023 WL 3493557 (C.D. Cal. Apr. 11, 2023) .................................................... 16

*Ward v. Follett Corp.*,
　158 F.R.D. 645 (N.D. Cal. 1994) ........................................................................ 16

**STATUTES**

28 U.S.C.
　§ 1391(b)(1) ............................................................................................................ 8
　§ 1404(a) ........................................................................................................*passim*

**RULES**

Fed. R. Civ. P. 1 ........................................................................................................ 18

Local Rule 7-3 ............................................................................................................ 3

## I.      INTRODUCTION

Plaintiff Malm, Inc. ("Malm") filed this putative antitrust class action against Defendants CoStar Group, Inc. and CoStar Realty Information, Inc. (together, "CoStar") in the wrong forum.  Under the applicable forum-selection clause in CoStar's Terms of Use ("Terms")—which Malm affirmatively accepted on multiple occasions—Malm agreed to litigate disputes arising from its use of CoStar's products exclusively in federal and state courts in Virginia.  Malm's allegations indisputably regard the use of CoStar's products.  In fact, the complaint explicitly alleges that it is through CoStar's enforcement of its allegedly "exclusionary" "Terms and Conditions" that CoStar has purportedly advanced an anticompetitive scheme.  *See* Compl. ¶¶ 31, 55–68.  Yet Malm filed this suit in the Central District of California, in contravention of the Terms.

Settled precedent holds that the forum-selection clause must be given "controlling weight in all but the most exceptional cases."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Texas*, 571 U.S. 49, 59–60 (2013).  Here, the full text of the Terms was displayed directly to Malm in the CoStar website pop-up, the pop-up could not be bypassed, and Malm chose to click "Accept" to those Terms, rather than "Decline," on at least nine separate occasions.  No exceptional circumstances exist—there was no fraud, overreaching, or coercion.

Transfer to the Eastern District of Virginia is also warranted under the first-to-file rule because a substantially similar putative class action, *Shapiro Hospitalities LLC v. CoStar Group, Inc.*, No. 1:26-cv-01027 (E.D. Va. Apr. 14, 2026) ("*Shapiro*"), was filed a day before this case in the Eastern District of Virginia and involves the same putative nationwide class and nearly identical claims and issues.  Judicial economy, the avoidance of inconsistent rulings, and the prevention of duplicative discovery all require that the two cases be consolidated before a single court.

Finally, the Court should grant a brief stay of discovery to avoid unnecessary waste of the Court's and the parties' resources. Malm has filed a motion before the Judicial Panel on Multidistrict Litigation (the "JPML") seeking centralization of this action, the *Shapiro* action, and *CoStar Group, Inc., v. Commercial Real Estate Exchange, Inc.*, No. 2:20-cv-8819 (C.D. Cal. Aug. 5, 2022) ("*CREXi*").[1] Because a decision on this Motion and the JPML motion will necessarily dictate the forum to hear the putative class actions during the discovery phase, staying discovery pending those rulings will conserve judicial resources and ensure uniform adjudication.

However, the pendency of that JPML motion should not dissuade this Court from timely ruling on CoStar's Motion. The JPML has consistently held that "where 'a reasonable prospect' exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to Section 1407 centralization."[2] *See In re 1-800 Contacts Antitrust Litig.*, 282 F. Supp. 3d 1358, 1359 (J.P.M.L. 2017); *see also In re Gerber Probiotic*

---

[1] CoStar opposes centralization on the grounds that *CREXi* is at its core a non-class action copyright case that has been litigated for six years and is factually and legally distinct from the two putative antitrust class actions, and a section 1404(a) transfer to the Eastern District of Virginia will fully resolve any multidistrict issues as between those two cases without the procedural complications of MDL treatment. On May 20, 2026, after Malm filed the JPML motion, One Real Estate LLC, dba The ONE Street Company ("One Street") filed a putative class action lawsuit against CoStar in the United States District Court for the District of Columbia. *One Real Estate LLC v. CoStar Group, Inc.*, No. 1:26-cv-01735 (D.D.C. May 20, 2026). Like the instant case, the *One Street* complaint alleges that CoStar monopolized the markets for commercial real estate ("CRE") listing and information services through a purported anticompetitive scheme involving *de facto* exclusive contracts, watermarking, and technological barriers. *See id.* CoStar intends to transfer *One Real Estate LLC* to the Eastern District of Virginia as well.

[2] While *CREXi* is also pending before this Court, the pendency of CREXi's antitrust counterclaims has no bearing on the enforceability of the forum-selection clause at issue in this action. Nor do CREXi's claims share a necessary connection to the putative class actions brought by Malm and Shapiro. CREXi is a CoStar competitor, not a customer, and its years-old claims rest on a distinct theory concerning CoStar's alleged refusal to grant CREXi access to CoStar-hosted content (as well as CREXi's allegation that CoStar's facially non-exclusive contracts with brokers, *not* CREXi, are "*de facto*" exclusive). The forum-selection clause, which governs disputes in connection to the use of CoStar's products, is not at issue in *CREXi*.

*Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (same).

## II.    BACKGROUND

### A.    The Parties

Malm alleges that it is a corporation organized under the laws of California with a principal place of business in Lafayette, California.  Compl. ¶ 17.

Defendant CoStar Group, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Arlington, Virginia, which is located within the Eastern District of Virginia.  *Id.* ¶ 18; Edalatkhah Decl. ¶ 3.  Defendant CoStar Realty Information, Inc. is likewise a Delaware corporation with its principal place of business in Arlington, Virginia, and is a wholly owned subsidiary of CoStar Group, Inc.  *Id.* ¶ 19; Edalatkhah Decl. ¶ 3.  CoStar's global headquarters is in Arlington, Virginia, and the vast majority of CoStar's executive team is based there, including Andy Florance, Chief Executive Officer; Christina M. Lown, Chief Financial Officer; Frank Simuor, Chief Technology Officer; Gene Boxer, General Counsel; and Cyndi Eakin, Chief Accounting Officer.  Edalatkhah Decl. ¶ 5.  CoStar's global research center, which employs approximately 3,500 additional employees, is also located in Virginia.  *Id.* ¶ 6.

### B.    Malm's Claims

On April 15, 2026, Malm filed this putative class action alleging that CoStar violated Sections 1 and 2 of the Sherman Act, the California Cartwright Act, and the California Unfair Competition Law (the "UCL").  *See generally* Compl.  Malm alleges that CoStar acquired and maintained monopoly power in CRE listing marketplaces and CRE information services through an exclusionary "scheme."  *Id.* at ¶¶ 53–102.  According to the complaint, there are three components to the "scheme": *de facto* exclusive contracts that allegedly restrict brokers from sharing their own listings, data, and photographs with listing marketplaces that compete with CoStar's LoopNet marketplace; manipulation of broker-supplied content through

watermarking and fingerprinting; and technological barriers such as IP-address blocking, firewalls, and automated detection systems. *Id.* ¶ 53.

The complaint's allegations are centered on the contractual terms governing the use of CoStar's products. Malm alleges that CoStar conditions access to the CoStar Suite, its information product, and LoopNet, its CRE marketplace, on customers' agreement to "Terms and Conditions" that allegedly prohibit customers from sharing their own listings, data, and photographs with CoStar's competitors. *Id.* at ¶¶ 55–56. Specifically, the complaint quotes a provision of CoStar's Terms and Conditions that prohibit a "Licensee" from distributing, copying, or reproducing "any portion of the Licensed Product." *Id.* ¶ 56. "Licensed Product" includes information and images contained on CoStar's CRE database. *Id.* ¶ 57. Malm also alleges that "CoStar's contractual terms" give CoStar the right to "fingerprint" or alter property listing information, which enables CoStar to detect its data on competitors' platforms. *Id.* ¶¶ 78, 80. The complaint further alleges that those contractual provisions deter brokers from working with competitors and foreclose rival platforms from obtaining the broker-supplied data needed to compete. *Id.* ¶¶ 60, 81.[3]

Malm seeks to represent a nationwide class and a California subclass of persons and entities who paid CoStar for CRE information and/or listing services during the period beginning April 14, 2022. *Id.* ¶ 264.

---

[3] CoStar, of course, disputes these allegations. At their core, they pretend that CoStar's Terms preclude sharing customer information with competitors by taking ownership and control of such information. The opposite is true. The same Terms Malm describes as "exclusionary" expressly provide that users "retain any applicable ownership rights that [they] may have with respect to [their] Submitted Content.'" Edalatkhah Decl. Ex. 1 § 8(b); *see also* Compl. ¶ 58 (acknowledging that CoStar's Terms provide "that brokers 'retain [their] rights' to information and images they provide to CoStar"). Thus, CoStar customers can—and do—share their listings with competing sites. Mr. Malm himself is one example. *See* Tomkowiak Decl. Ex. B. But while the allegations are counter-factual, they certainly pertain to the Terms, which is the critical point for this Motion.

### C.    The CoStar Terms of Use and Forum Selection Clause

CoStar maintains Terms that govern the use of the CoStar Suite. Edalatkhah Decl. ¶ 7. CoStar's Terms include a mandatory forum-selection clause dictating that Virginia is the exclusive jurisdiction for any action brought in connection with CoStar's Terms or use of the CoStar Suite. *Id.* ¶ 8; *Id.* Ex. 1 § 23.[4] Section 23 of the Terms, entitled "Choice of Law; Jurisdiction," provides in relevant part:

> These Terms of Use and your use of this Product shall be governed by and construed under the laws of Delaware without regard to choice of law principles. **Unless otherwise agreed to in writing, the federal and state courts located in Virginia shall be the exclusive jurisdiction for any action brought against Company in connection with these Terms of Use or use of the Product.** You irrevocably consent to the jurisdiction and venue of the federal and state courts located in Virginia, and to the jurisdiction of the federal, provincial and/or state courts located in any State or Province where you are located, for any action brought against you in connection with these Terms of Use or use of the Product.
>
> EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ITS RIGHT TO PARTICIPATE IN A CLASS OR COLLECTIVE ACTION AGAINST THE OTHER PARTY IN ANY DISPUTE OR PROCEEDING (WHETHER BASED ON CONTRACT, STATUTE, TORT, OR ANY OTHER THEORY).

*Id.* Ex. 1 § 23 (emphasis added).

The Terms also require users to waive any right to bring or participate in a class or collective action against CoStar. *See id.*

CoStar Suite users must affirmatively agree to the Terms on a recurring basis. *Id.* ¶ 12. On or after the 30th day since a user's last login to the CoStar Suite, after the user logs in, and before they are able to interact with the CoStar Suite, they are presented with a pop-up with the full text of the Terms. *Id.* The text in the pop-up is drawn directly from CoStar's Terms of Use and cannot be bypassed by a user. *Id.*

---

[4] Each time a user logs in to the CoStar Suite or LoopNet, the login screen includes conspicuously placed language stating that, by logging in, the user accepts CoStar product's Terms of Use. The Terms of Use for the CoStar Suite and LoopNet include a forum-selection clause identifying federal and state courts located in Virginia as the exclusive jurisdiction for any action brought against CoStar "in connection with the[] Terms of Use or use of the Product." Edalatkhah Decl. ¶ 11; *Id.* Ex. 1 § 23; *Id.* Ex. 2 § 25.

¶ 13.  When the pop-up appears, the user is presented with two options with respect to the Terms of Use: "Accept" or "Decline."  *Id.* ¶ 14.  If the user clicks "Accept," the user is permitted to proceed to use the CoStar Suite.  If the user clicks "Decline," the user is redirected to the home page and cannot access the CoStar Suite.  *Id.*

### D. Malm's Acceptance of CoStar's Terms of Use

CoStar's records confirm that Malm was a subscriber to the CoStar Suite and LoopNet.  *Id.* ¶ 17.  Drew Malm—the only authorized user under Malm's CoStar subscription—actively used Malm's CoStar Suite account, and "represent[ed] and warrant[ed] that [he had] the right, power, and authority to agree to and be bound by the[] Terms."  *Id.* ¶¶ 17, 19; *Id.* Ex. 1 § 2.  CoStar's records reflect that Mr. Malm was presented with the mandatory pop-up setting forth the Terms and affirmatively clicked "Accept" at least nine times after the Terms were updated on February 7, 2025: on February 20, 2025; March 30, 2025; May 5, 2025; June 6, 2025; July 23, 2025; September 11, 2025; October 15, 2025; November 14, 2025; and December 21, 2025.  *Id.* ¶ 18.

### E. The *Shapiro* Antitrust Class Action Was Filed First in the Eastern District of Virginia

One day before Malm filed this action, on April 14, 2026, Shapiro Hospitalities LLC d/b/a Grand & Co. ("Shapiro") filed a substantially similar putative antitrust class action against CoStar in the Eastern District of Virginia.  *See Shapiro*, No. 1:26-cv-01027, Dkt. 1 ("*Shapiro* Compl.").  The *Shapiro* complaint alleges violations of Sections 1 and 2 of the Sherman Act based on an alleged anticompetitive scheme, including restrictive customer terms, watermarking of customer photographs, IP blocking of competitors, and technological barriers.  *Id.* ¶¶ 7–9.[5]  Shapiro seeks to represent a nationwide class of persons and entities who

---

[5] *Shapiro* also alleges that the anticompetitive "scheme" included coercing three CRE brokerage firms—CBRE, JLL, and Cushman & Wakefield—into long-term agreements under which they agreed not to compete with CoStar in the online CRE information and listing services market.  *Shapiro* Compl. ¶¶ 6, 135–141.

paid CoStar for CRE information and/or listing services during the period beginning April 14, 2022. *Id.* ¶ 214.

The *Shapiro* complaint and Malm's complaint are nearly identical in substance. Both cases allege the same relevant markets (CRE information services and CRE listing databases), the same class period (beginning April 14, 2022), and the same theories of liability under the Sherman Act. Compl. ¶¶ 1, 9–13, 264; *Shapiro* Compl. ¶¶ 7, 13, 142–166, 213. Both complaints describe the same alleged anticompetitive scheme: CoStar's purported imposition of *de facto* exclusionary contractual provisions and its enforcement of those provisions through alleged watermarking, IP blocking, website scraping, and litigation. Compl. ¶¶ 55–102; *Shapiro* Compl. ¶¶ 142–177.

## III.   LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may, for "the convenience of parties and witnesses," "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The purpose of section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense[.]'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (*quoting Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26–27 (1960)). In considering a transfer pursuant to section 1404(a), the district court undertakes an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988). Courts generally "must evaluate both the convenience of the parties and various public-interest considerations," "weigh[ing] the relevant factors and decid[ing] whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interests of justice.'" *Atl. Marine*, 571 U.S. at 62–63 (*quoting* 28 U.S.C. § 1404(a)).

However, "[t]he calculus changes[] when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* at 63 (citation and internal quotation marks omitted). Under such circumstances, "a proper application of [section] 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 59–60 (citation and internal quotation marks omitted). The plaintiff's choice of forum merits no weight, and a court should not consider arguments about the parties' private interests. *Id.* at 63–64.

A forum-selection clause is prima facie valid and should not be set aside unless the party challenging enforcement can show it is unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co. (Bremen)*, 407 U.S. 1, 10 (1972). "The party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust[.]'" *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003) (citation omitted).

## IV.    ARGUMENT

In deciding a motion to transfer involving a forum-selection clause, a district court determines whether: (1) the action could have originally been brought in the proposed transferee forum; (2) the clause is mandatory and the plaintiff's claims fall within the clause's scope; (3) the clause is valid and enforceable; and (4) the § 1404(a) public-interest factors outweigh the otherwise controlling weight of the clause. *See Quality Office Furnishing, Inc. v. Allsteel, Inc.*, 2017 WL 11662670, at *3, *6–7 (C.D. Cal. June 23, 2017).

### A.    This Action Could Have Been Filed in the Eastern District of Virginia

A court can transfer an action under section 1404(a) only to a judicial district where the action originally could have been brought. *See* 28 U.S.C. § 1404(a). Here, venue is proper in the Eastern District of Virginia because CoStar's principal place of business is in Arlington, Virginia. Compl. ¶¶ 18–19; 28 U.S.C. § 1391(b)(1)

(allowing an action to be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located").

### B.   Malm Agreed to the Forum Selection Clause, Which is Mandatory and Plainly Covers Malm's Claim

#### 1.   Malm Agreed to Be Bound by the Forum Selection Clause

By signing into Malm's CoStar Suite account and clicking "Accept" to mandatory pop-ups displaying the full text of CoStar's Terms, Mr. Malm affirmatively consented on Malm's behalf to the forum-selection clause in CoStar's Terms.  On nine different occasions after this clause was added, after Mr. Malm signed into the CoStar Suite, he was notified on the sign-in page that: "YOUR USE OF THIS WEBSITE CONSTITUTES YOUR AGREEMENT TO BE BOUND BY THESE TERMS OF USE."  Edalatkhah Decl. Ex. 3 at 67.  The phrase "CoStar Terms of Use" appeared in bold, bright blue, color contrasting text at the top of the pop-up and CoStar's full Terms were included in the pop-up. *See id.*; *Id.* ¶ 13.  Mr. Malm was able to read the Terms by continuing to scroll down in the pop-up. Importantly, the pop-up could not be bypassed—Mr. Malm was required to affirmatively click "Accept" before proceeding to use the CoStar Suite. *Id.* ¶ 14.

The type of agreement that Malm accepted on nine different occasions is a "clickwrap" agreement, which "requires users to expressly manifest assent to the terms by, for example, clicking an 'I accept' button." *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014).  Such an agreement presents the user with a message on his device screen, requiring him to assent to the terms of the agreement by clicking an icon. *Id.*  "Clickwrap agreements have been held to constitute mutual assent," making them valid and enforceable contracts. *See id.*; *Sandler v. iStockphoto LP*, 2016 WL 871626, at *2 (C.D. Cal. Feb. 5, 2016) ("Clickwrap agreements have been routinely upheld by circuit and district courts." (cleaned up)).

Courts that have considered similar motions to transfer have consistently enforced forum selection clauses in "clickwrap" online terms of use. *See, e.g.*, *Moretti v. Hertz Corp.*, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) ("It is sufficient to require a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button as long as the user has access to the terms of service." (cleaned up)); *Gamayo v. Match.com LLC*, 2011 WL 3739542, at *7 (N.D. Cal. Aug. 24, 2011) (enforcing forum selection clause and transferring action to Northern District of Texas where plaintiff was subject automatically to Match.com's terms of use by using the site).

"Even if Plaintiff[] did not ultimately read the terms," courts enforce clickwrap agreements. *Sandler*, 2016 WL 871626, at *2. Here, however, the full Terms were displayed directly in the pop-up, making it even clearer that Malm had actual notice of and access to all provisions, including the forum-selection clause.

### 2. The Forum-Selection Clause is Mandatory, and Malm's Claims Fall Within its Scope

Courts "apply federal contract law to interpret the scope of a forum-selection clause[.]" *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). "In interpreting a forum-selection clause under federal law," the "general principles for interpreting contracts" control. *Id.* (citation omitted). A straightforward application of these principles confirms that the forum-selection clause in CoStar's Terms is mandatory and covers Malm's claim.

The forum selection clause uses mandatory and exclusive language. Section 23 of the Terms provides that "the federal and state courts located in ***Virginia shall be the exclusive jurisdiction*** for any action brought against Company in connection with these Terms of Use or use of the Product." Edalatkhah Decl. Ex. 1 § 23 (emphasis added). "The prevailing rule is . . . that where venue is specified with mandatory language the clause will be enforced." *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989); *see also Bowman v. Kona Univ., Inc.*, 2013 WL

3819674, at *1 (C.D. Cal. July 23, 2013) ("To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one."). Here, the clause unambiguously designates Virginia as the exclusive judicial forum.

The scope of the forum-selection clause covers all of Malm's claims. The clause applies to any action "in connection with these Terms of Use or use of the Product." Edalatkhah Decl. Ex. 1 § 23. Courts distinguish between narrow clauses limited to claims "arising out of" an agreement and broader clauses covering claims "relating to", "with respect to", "with reference to" or "in connection with" an agreement, with the latter "apply[ing] to any dispute that reference[s] the agreement or ha[s] some 'logical or causal connection'" to the contractual relationship. *Sun*, 901 F.3d at 1086.

The phrase "in connection with these Terms of Use or use of the Product" is broad language akin to "relating to," which encompasses any dispute with a logical or causal connection to the use of CoStar's products. *See id.; Nomadix, Inc. v. Guest-Tek Interactive Entm't. Ltd.*, 2021 WL 4027807, at *1 (9th Cir. Sept. 3, 2021) (interpreting "in connection with" in forum-selection clause as requiring only a "logical or causal connection" to the agreement); *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 & n.2 (1st Cir. 2011) (similar). Malm's antitrust claims arise directly from its use of CoStar's CRE information and listing products. The complaint alleges that CoStar purportedly advanced an anticompetitive scheme through its "contractual terms," which allegedly prohibit customers from sharing their own information with CoStar's competitors and allow CoStar to alter property listing information so that CoStar can detect its data on competitors' platforms. Compl. ¶¶ 55–56, 60, 78, 80. Malm's claims that CoStar used those very terms to "lock brokers into exclusive relationships" and maintain monopoly power depend upon, reference, and have a direct logical and causal connection to Malm's contractual relationship with CoStar and its use of CoStar's products. *See id.* ¶¶ 198, 213, 228, 244; *Eliza Labs, Inc. v. X Corp.*, 2025 WL 3003766, at *5 (N.D. Cal. Oct. 27, 2025) (antitrust

claims based on defendant's terms and conditions were "encompassed within the forum selection clauses" that covered disputes "related to" the agreements); *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 775–76 (N.D. Cal. 2015) (antitrust claim based on "exclusive dealing contracts" fell within the scope of forum-selection clause that covered any action "to interpret or enforce any provision" of the agreement).

Courts routinely hold that such "in connection with" language encompasses the types of claims at issue. *See N.Z. v. Fenix Int'l Ltd.*, 2025 WL 1122493, at *3 (C.D. Cal. Apr. 9, 2025) (plaintiffs' claims covered by forum selection clause when injuries stemmed from use of website, which was governed by defendant's terms of use), *reconsideration denied*, 2025 WL 3626154 (C.D. Cal. Dec. 12, 2025); *Losson v. Union des Associations Europeennes de Football*, 2024 WL 3406987, at *2 (N.D. Cal. July 11, 2024) (website terms' forum selection clause had a "logical or causal connection" to plaintiff's claims because those terms "govern[ed] his access to and use of the websites which led to the alleged violations").

### C.   The Forum-Selection Clause is Valid and Enforceable

Because Malm agreed to the forum-selection clause in CoStar's Terms, the forum-selection clause is valid and enforceable unless Malm can demonstrate: (1) "the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "enforcement would contravene a strong public policy of the forum in which suit is brought." *Murphy*, 362 F.3d at 1140 (*quoting Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (en banc)).  These exceptions are construed narrowly, *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996), and none apply here.

*First*, if Malm wishes to escape a forum selection clause on the grounds of fraud or overreaching, it must show that the inclusion of that clause in the contract was the product of fraud or coercion. *Crawford*, 2014 WL 6606563, at *5 n.3 (*citing*

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)). Malm does not (and cannot) allege that the forum-selection clause in the Terms was a product of fraud or coercion. To the extent Malm contends CoStar's terms are non-negotiable, courts have repeatedly rejected that argument as a basis to invalidate a forum-selection clause. *See, e.g.*, *Murphy*, 362 F.3d at 1141.

*Second*, Malm would not be deprived of its day in court if the forum-selection clause is enforced. The Eastern District of Virginia is a fully adequate forum. CoStar is headquartered there, the *Shapiro* action is already proceeding there, and the Eastern District of Virginia is fully capable of adjudicating Sherman Act and state-law claims. Malm cannot contend any grave difficulty that would prevent it from litigating in the Eastern District of Virginia.

*Third*, enforcing the forum-selection clause does not contravene California public policy. Proving a forum-selection clause "would contravene a strong public policy of the forum in which suit is brought" requires a plaintiff to "point to a statute or judicial decision that clearly states such a strong public policy." *Sun*, 901 F.3d at 1090 (*quoting Bremen*, 407 U.S. at 15). Malm has not pointed to (and CoStar is not aware of) any statute or judicial decision holding that enforcing a forum-selection clause in a case involving UCL and Cartwright Act claims would bring about a result contrary to the public policy of California. *See id.* Indeed, this district recently upheld a forum-selection clause in a UCL case. *ATSC Melrose, Inc. v. IDEXX Distribution, Inc.*, 2026 WL 936937, at *4 (C.D. Cal. Apr. 1, 2026). And the California Supreme Court recently held that the public policy exception "does not give courts unbounded discretion to decline to enforce otherwise valid forum selection clauses." *EpicentRx, Inc. v. Super. Ct.*, 18 Cal. 5th 58, 75, 84 (2025). The Eastern District of Virginia will afford Malm the same rights as this Court.

### D. Section 1404(a)'s Public Interest Factors Support Transfer

"[T]he party acting in violation of the forum-selection clause . . . must bear the burden of showing that public-interest factors overwhelmingly disfavor a

transfer." *Atl. Marine*, 571 U.S. at 67. Only in an "unusual" or "exceptional" case will the public-interest factors overcome the forum designated by a valid forum-selection clause. *Id.* at 63–64. The public-interest factors considered under Section 1404(a) include: "(1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community unrelated to the litigation; (3) the local interest in resolving the controversy at home; (4) the interest in having [the] case tried in a forum familiar with the law that governs the action; and (5) the avoidance of unnecessary conflicts of law problems." *ATSC Melrose, Inc.*, 2026 WL 936937, at *4 (*citing Gemini Cap. Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1094 (9th Cir. 1998)). Here, every factor favors transfer or, at a minimum, is neutral.

With respect to the first factor, as this district has previously noted, "this Court is highly congested, having one of the heaviest caseloads in the nation." *Id.* The Eastern District of Virginia, by contrast, is renowned for its expeditious docket and is commonly known as the "rocket docket." *See Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 996 (E.D. Va. 2011). Transfer would reduce, not increase, administrative burden by consolidating two near-identical cases before a single court. With respect to the second factor, there is no reason to impose jury duty on residents of this District for an allegedly nationwide dispute with no special nexus to California, when the case can be tried where CoStar is headquartered. Third, California does not have a paramount local interest in this nationwide dispute. Although Malm is at home in California, it agreed to conduct business with CoStar, whose headquarters is in Virginia, and Malm is seeking to represent a nationwide class. Malm itself alleges that CoStar provides CRE services to customers "throughout the United States" and that "the relevant geographic market . . . is the United States." Compl. ¶¶ 28, 149. As a result, Virginia has at least an equal—if not higher—interest in resolving these claims than does California. With respect to the fourth factor, Malm's principal claims arise under federal antitrust law that any

federal court can apply.  The California Cartwright Act and UCL claims are supplemental state-law claims that do not override the forum selection clause or create extraordinary circumstances.  Finally, as to the fifth factor, the *Shapiro* action is already pending in the Eastern District of Virginia, with a motion to dismiss due June 8, 2026.  *Shapiro*, No. 1:26-cv-01027, Dkt. 25.  The district judge in the Eastern District of Virginia is more than capable of applying California law, and there are no unnecessary conflicts of law implicated by the transfer of this action.  *See ATSC Melrose, Inc.*, 2026 WL 936937, at *4.

Because none of the five public-interest factors weigh against transfer, this case does not present the "extraordinary" circumstances demanded by *Atlantic Marine* to "defeat a transfer motion" and override a valid forum-selection clause. *KMS, LLC v. Major League Trucking, Inc.*, 2023 WL 5333784, at *4 (C.D. Cal. July 25, 2023) (*citing Atl. Marine*, 571 U.S. at 52).

### E.   Alternatively, the Court Should Transfer This Action Pursuant to the First-to-File Rule

The first-to-file rule is a "doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys. Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982).  This rule "was developed to serve [] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (internal quotation omitted).  In addition to judicial efficiency, this rule helps prevent "the risk of inconsistent decisions that would arise from multiple litigations of identical claims." *Ruckus Wireless, Inc. v. Harris Corp.*, 2012 WL 588792, at *2 (N.D. Cal. Feb. 22, 2012).  "Under this doctrine, a district court may choose to transfer, stay or dismiss an action where a similar complaint has been filed in another district court." *Hilton v. Apple Inc.*, 2013 WL 5487317, at *4 (N.D. Cal. Oct. 1, 2013) (*citing Alltrade*, 946 F.2d at 623).

Courts consider three factors in deciding whether to apply the first-to-file rule: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Id.* (*citing Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994)).  Here, all three factors weigh in favor of applying the first-to-file rule and transferring this action to the Eastern District of Virginia.

*First*, *Shapiro* was filed on April 14, 2026, one day before this action was filed. *See Shapiro* Compl.  "One day is sufficient to satisfy the chronology factor." *Gunnar Optiks, LLC v. Mad Panda, LLC*, 2015 WL 1013775, at *2 (S.D. Cal. Mar. 9, 2015); *see also Martin v. Graybar Elec. Co.*, 266 F.2d 202, 205 (7th Cir. 1959) (same); *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474, 475 (3d Cir. 1942) (same).

*Second*, the parties in this action are substantially similar to those in *Shapiro*. Courts in the Ninth Circuit have "adopted a flexible approach in evaluating the similarity of the parties" in a first-to-file rule analysis. *See Frank v. Yardi Sys. Inc.*, 2024 WL 5402339, at *3 (C.D. Cal. Dec. 11, 2024) (collecting cases).  This factor is satisfied "where there is at least some overlap between the parties, as opposed to being completely identical." *Variscite, Inc. v. City of Los Angeles*, 2023 WL 3493557, at *11 (C.D. Cal. Apr. 11, 2023).  Here, the defendants in both actions are identical.  As to the plaintiffs, both Malm and Shapiro Hospitalities LLC are CRE brokerage firms that allegedly paid CoStar for CRE information and listing services and bring claims on behalf of identical nationwide classes.  Compl. ¶¶ 17, 264; *Shapiro* Compl. ¶¶18, 213; *see Krikorian v. Post Consumer Brands, LLC*, 2025 WL 2092825, at *3 (C.D. Cal. June 25, 2025) (applying first-to-file rule where plaintiffs sought to "represent substantially overlapping nationwide classes"); *Rodriguez v. JetBlue Airways Corp.*, 2024 WL 841482, at *3 (C.D. Cal. Feb. 28, 2024) ("[W]hen the cases involved are class actions, 'the classes, and not the class representatives, are compared.'").  In this action, Malm seeks to represent "[a]ll persons and entities in the United States and its territories that directly paid Defendants for use of their

CRE information and/or listing services products at any time during the period starting on April 14, 2022" as well as a California subclass. Compl. ¶ 264. Similarly, the plaintiff in *Shapiro* seeks to represent an identical nationwide class defined as "[a]ll persons and entities who paid any fees to CoStar or LoopNet for Internet CRE listing or information services at any time during the period of April 14, 2022 ('Class Period') until Defendants' unlawful conduct and their anticompetitive effects cease to persist." *Shapiro* Compl. ¶ 213. Courts have found substantial similarity where, as here, there are "subclasses that are dissimilar from each other" but the nationwide classes are "identical." *See Rodriguez*, 2024 WL 841482, at *4; *see also Koehler v. Pepperidge Farm, Inc.*, 2013 WL 4806895, at *4 (N.D. Cal. Sept. 9, 2013) (finding parties were substantially similar when first-filed action sought to represent a nationwide class and the subsequent case sought to represent only a California class).

*Finally*, the issues in this action are substantially similar to those in *Shapiro*. To satisfy the third first-to-file factor, "[t]he issues in both cases [] need not be identical, only substantially similar." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). "Therefore, the first-to-file rule can apply even if the second case has additional or differing claims." *Rodriguez*, 2024 WL 841482, at *4. Both actions allege that CoStar violated Sections 1 and 2 of the Sherman Act through the same anticompetitive scheme involving alleged restrictive terms, IP blocking, and technological barriers. Compl. ¶¶ 55–102; *Shapiro* Compl. ¶¶ 142–177. Moreover, the additional California state claims in this action stem from similar factual allegations. Compl. ¶¶ 225, 228, 241, 244, 258 (describing alleged exclusive dealing arrangements as the basis for the California claims); *see also Pacesetter Sys. Inc.*, 678 F.2d at 95 (finding that courts should apply the first-to-file rule "with a view to the dictates of sound judicial administration"). Thus, all three factors weigh in favor of applying the first-to-file rule to transfer this case to the Eastern District of Virginia.

### F.    The Court Should Stay Discovery Pending the Outcome of Both Transfer Motions

CoStar respectfully requests that the Court stay discovery pending resolution of this Motion and Malm's JPML motion in order to avoid unnecessary waste of the Court's and the parties' resources.  A district court has the inherent power to stay its proceedings. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (affirming a stay of discovery by district court that furthered "the goal of efficiency for the court and litigants"); *see also Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (similar).  A court's decision to stay discovery "should take into consideration the court's obligation 'to secure the just, speedy, and inexpensive determination in every action.'" *Amey v. Cinemark USA Inc.*, 2013 WL 12143815, at *1 (C.D. Cal. Oct. 18, 2013) (*quoting* Fed. R. Civ. P. 1).

"When considering a motion to stay, the district court should consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Rivers*, 980 F. Supp. at 1360.  "Courts frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case." *Addison v. DIRECTV, Inc.*, 2014 WL 12855831, at *1 (C.D. Cal. Nov. 14, 2014) (citation omitted).

### 1.    CoStar Will Be Prejudiced if Discovery Proceeds

CoStar will be prejudiced if discovery proceeds for multiple reasons.  The unique circumstances of this case—where two pending motions may transfer or consolidate this action and require an amended pleading—counsel in favor of a brief stay so that discovery may proceed in an orderly and efficient manner once the forum, parties, and operative complaint are determined, rather than in a piecemeal and potentially conflicting fashion.

Compounding these concerns, and further justifying a brief stay such that appropriate discovery can be coordinated, and related motions practice undertaken

once, Malm has already served premature discovery requests that go far beyond what is appropriate at this stage. On May 8, 2026, before the parties conferred pursuant to Rule 26(f), Malm served its First Set of Requests for Production, which requests documents from January 1, 2012 (more than fourteen years ago) to the present on a sweeping list of topics, including documents from every actual or potential acquisition, merger, or investment in any CRE information or listing company; documents from prior litigations and investigations; and policies related to watermarking, fingerprinting, and IP-blocking, among other requests. Tomkowiak Decl. Ex. A. These facially overbroad requests reflect sweeping merits discovery and are neither targeted to class certification nor appropriate given the pending transfer motions. Requiring CoStar to respond to, and engage in motion practice regarding, burdensome and overbroad discovery in a forum that may not ultimately adjudicate the case wastes resources for all parties and the Court. *See Amey*, 2013 WL 12143815, at *2. Moreover, any progress on stipulated orders governing discovery (for example, protective orders or ESI orders) would be complicated if other parties are added to the case through consolidation, potentially requiring those orders to be renegotiated. Requiring CoStar to simultaneously respond to 14 years of merits-and-beyond discovery while the fundamental questions of forum, parties, and claims remain unresolved would prejudice CoStar.

### 2. Malm Will Face no Hardship if Discovery is Stayed

Malm will sustain no prejudice if the Court stays discovery until the JPML issues its decision and this Court rules on CoStar's Motion. CoStar seeks a brief stay of discovery pending those decisions, not an indefinite stay. Any hardship resulting from a temporary pause in discovery, which has barely commenced and is at a very preliminary stage, is minimal and far outweighed by the efficiencies of waiting until the questions of transfer and consolidation are decided to allow discovery to proceed in an orderly fashion on the operative complaint. *See Segovia v. Bristol-Myers Squibb Co.*, 2016 WL 7007482, at *3 (D. Haw. Nov. 30, 2016)

(finding minimal potential prejudice on plaintiff where the case was "in its early stages, with the pleadings still unsettled"); *Stark v. Pfizer*, 2014 WL 2938445, at *2 (N.D. Cal. June 27, 2014) ("The potential prejudice to Plaintiff that could result from a stay is minimal, as the JPML's decision is likely to be issued shortly.  On the other hand, Defendants would face the risk of unnecessary proceedings and inconsistent rulings on recurring questions of law and fact if the case is not stayed.").

### 3.    A Stay of Discovery Serves the Interests of Judicial Economy

"Preservation of judicial resources is a primary factor to consider in evaluating a motion to stay proceedings pending a transfer to an MDL court."  *Segovia*, 2016 WL 7007482, at *2.  The JPML's ruling and this Court's ruling on CoStar's Motion will determine the forum to hear the putative class actions, who the parties are, and what claims remain at issue.  Staying discovery pending those rulings will conserve judicial resources, avoid duplicative litigation, and ensure uniform adjudication.  Indeed, it is well recognized that staying an action pending an MDL Panel is appropriate "when it would avoid the needless duplication of work and the possibility of inconsistent rulings." *See id.*  A stay of discovery will allow the Court and the parties to avoid expending resources on discovery that may prove entirely duplicative if this Court grants CoStar's Motion to transfer this action to the Eastern District of Virginia.  *See Amey*, 2013 WL 12143815, at *2 (staying discovery in light of possibility of duplicative discovery).  A stay of discovery will also avoid the possibility of inconsistent rulings on discovery motions, which will likely be necessary given the overbreadth of Malm's discovery requests thus far.  Even if this case remains in this Court and is consolidated with the *Shapiro* action through MDL proceedings, it will be more efficient for the Court to set case deadlines and consider stipulated discovery orders after a consolidated complaint is filed.  Under these circumstances, the Court should conserve judicial resources by staying discovery.

## V.       CONCLUSION

The Court should transfer this case to the Eastern District of Virginia and stay discovery pending the Court's ruling on this motion and a ruling on the JPML Motion.

Dated: May 22, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Sarah A. Tomkowiak*
Sarah A. Tomkowiak
(*admitted pro hac vice*)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201
Email: sarah.tomkowiak@lw.com

Elyse M. Greenwald
(Bar No. 268050)
10250 Constellation Boulevard
Suite 1100
Los Angeles, CA 90067
Tel: 424.653.5525
Fax: 424.653.5501
Email: elyse.greenwald@lw.com

*Attorneys for Defendants CoStar Group, Inc. and CoStar Realty Information, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants CoStar Group, Inc. and CoStar Realty Information, Inc., certifies that this brief contains 6,986 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 22, 2026

By: */s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak